# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# HAMMOND DIVISION

| WALTER WILLIAMS, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | CASE NO. 2:08-CV-253 |
| UNITED STATES STEEL CORP. | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

Before the court is Defendant, United States Steel Corp.'s ("U.S. Steel's"), Motion for Summary Judgment, filed on October 14, 2009. After receiving no response from the plaintiff to the Motion, the Court entered an Order directing the Plaintiff to respond no later than January 20, 2010 or the Court would proceed to rule without the benefit of a response. That time has now expired without response from the Plaintiff and for the following reasons U.S. Steel's Motion for Summary Judgment will be GRANTED.

## APPLICABLE STANDARD

Summary judgment is appropriate when the record shows that there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Disputes concerning material facts are genuine where the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In deciding whether genuine issues of material fact exist, the court construes all facts in a light most favorable to the non-moving party and draws all

1

reasonable inferences in favor of the non-moving party. *See id.* at 255. However, neither the "mere existence of some alleged factual dispute between the parties," *id.,* 477 U.S. at 247, nor the existence of "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986), will defeat a motion for summary judgment. *Michas v. Health Cost Controls of Ill., Inc.,* 209 F.3d 687, 692 (7th Cir. 2000).

Summary judgment is not a substitute for a trial on the merits nor is it a vehicle for resolving factual disputes. *Waldridge v. Am. Hoechst Corp.,* 24 F.3d 918, 920 (7th Cir. 1994). Therefore, after drawing all reasonable inferences from the facts in favor of the non-movant, if genuine doubts remain and a reasonable fact-finder could find for the party opposing the motion, summary judgment is inappropriate. *See Shields Enterprises, Inc. v. First Chicago Corp.,* 975 F.2d 1290, 1294 (7th Cir. 1992); *Wolf v. City of Fitchburg,* 870 F.2d 1327, 1330 (7th Cir. 1989). But if it is clear that a plaintiff will be unable to satisfy the legal requirements necessary to establish his or her case, summary judgment is not only appropriate, but mandated. *See Celotex,* 477 U.S. at 322; *Ziliak v. AstraZeneca LP,* 324 F.3d 518, 520 (7th Cir. 2003). A failure to prove one essential element "necessarily renders all other facts immaterial." *Celotex,* 477 U.S. at 323.

The party seeking summary judgment on a claim on which the non-moving party bears the burden of proof at trial may discharge its burden by showing an absence of evidence to support the non-moving party's case. *Celotex,* 477 U.S. at 325. A plaintiff's self-serving statements, which are speculative or which lack a foundation of personal knowledge, and which are unsupported by specific concrete facts reflected in the record, cannot preclude summary judgment. *Albiero v. City of Kankakee,* 246 F.3d 927, 933 (7th Cir. 2001); *Stagman v. Ryan,* 176 F.3d 986, 995 (7th Cir. 1999); *Slowiak v. Land O'Lakes, Inc.,* 987 F.2d 1293, 1295 (7th Cir. 1993).

The summary judgment standard is applied rigorously in employment discrimination cases because intent and credibility are such critical issues and direct evidence is rarely available. *Seener v. Northcentral Technical Coll.,* 113 F.3d 750, 757 (7th Cir. 1997); *Wohl v. Spectrum Mfg., Inc.,* 94 F.3d 353, 354 (7th Cir. 1996). To that end, the court carefully reviews affidavits and depositions for circumstantial evidence which, if believed, would demonstrate discrimination. However, the Seventh Circuit has also made clear that employment discrimination cases are not governed by a separate set of rules, and thus remain amenable to disposition by summary judgment so long as there is no genuine dispute as to the material facts. *Giannopoulos v. Brach & Brock Confections, Inc.,* 109 F.3d 406, 410 (7th Cir. 1997).

## FACTUAL BACKGROUND

### General Facts

U. S. Steel is an integrated steel producer with a facility located in Gary, Indiana. As a condition of employment, U. S. Steel requires all job applicants to complete an Application for Employment. The applicant must provide truthful and accurate information on the application.

When an applicant receives an offer of employment from U. S. Steel, the offer is conditioned, in part, upon the prospective employee completing a Health Inventory form and passing a medical examination. As with the application, the prospective employee must provide truthful and accurate information on the Health Inventory. U. S. Steel may reject an applicant or discharge an employee at any time upon learning that the applicant or employee did not provide accurate and truthful information on the application or Health Inventory. Job applicants receive notice of these conditions by language contained in the Application for Employment, and express their acceptance of these conditions by signing the application.

Plaintiff Walter Williams, an African American, submitted an Application for Employment with U. S. Steel on April 30, 2001. U. S. Steel made an offer of employment to Williams and arranged for him to undergo a pre-employment physical at the Company's medical facility at Gary Works on May 31, 2001. During the physical, Williams completed a Health Inventory that detailed his health history. On question 515 of the Health Inventory, Williams first indicated that he had a history of seizures because his family witnessed him having seizures while sleeping. Williams then changed the response to question 515 to indicate that he did not have seizures because no doctor had diagnosed the condition. Williams successfully passed the pre-employment physical and began working at Gary Works on June 11, 2001.

Williams worked as a Utility Person in the Tin Products Department and was assigned as a Shearman at all times relevant to this case. Williams also was a member of the United Steelworkers of America ("USWA"), the recognized collective bargaining representative of labor employees at Gary Works, while working there.

The terms of Williams' employment were set forth in the Basic Labor Agreement ("BLA") between U. S. Steel and the USWA dated May 20, 2003. U. S. Steel's employment policies prohibit, among other things, harassment and discrimination based on race. The policies also advise employees of procedures that they must follow to report such behavior. The BLA also established a Civil Rights Committee to investigate and resolve civil rights complaints filed by bargaining unit employees. Williams knew that he could report discrimination to U. S. Steel under the policy and the collective bargaining agreement. (Williams Depo. pp. 67-68).

**Williams Disciplinary History**

On January 5, 2006, Williams received a five-day suspension for poor workmanship.

(Williams Depo. pp. 34-35; Williams Depo. Ex. 4). Area Manager Bill Coe issued the discipline because 3 coils were produced on Williams' shift with a mark on the wrong coating surface. (Williams Depo. pp. 30-35; Williams Depo. Ex. 4 ). The USWA subsequently filed a grievance on Williams' behalf challenging the suspension. (Williams Depo. p. 36; Williams Depo. Ex. 4; Kocel Aff'd ¶13). U. S. Steel denied the grievance after Williams and the USWA presented his position at two hearings provided under the BLA. (Williams Depo. pp. 36-37; Williams Depo. Ex. 4; Kocel Aff'd ¶14). Williams' grievance subsequently proceeded to an expedited arbitration hearing. After hearing all of the evidence and Williams' testimony, the Arbitrator determined that U. S. Steel had proper cause to suspend Williams for five days. (Williams Depo. p. 37; Williams Depo. Ex. 4; Kocel Aff'd ¶15). At no point during the grievance and arbitration proceedings did Williams contend that he was disciplined for racially discriminatory reasons. (Williams Depo. pp. 64-65).

On January 28, 2006, Williams received a five-day suspension, subject to discharge, for an unexcused absence on January 26, 2006. (Williams Depo. pp. 63-64, 72-73). Williams received the discipline because he did not have a doctor's note justifying his absence from work on January 26, 2006. (Williams Depo. pp. 73-75; Kocel Aff'd ¶17). U. S. Steel then held a preliminary hearing under the BLA to allow Williams and the USWA the opportunity to present facts relating to the discipline. (Kocel Aff'd ¶18). 30. U. S. Steel subsequently converted the suspension to discharge, and the USWA filed a grievance challenging the discharge. (Kocel Aff'd ¶19). Williams was retained at work during this period under Justice and Dignity ("J&D"), a provision of the BLA that allows employees to continue working until a final determination is made on the merits of the grievance. (Kocel Aff'd ¶20).

**Events Leading to Williams Termination**

5

On May 5, 2006, while on J&D, Williams submitted an application for intermittent leave under the FMLA. (Williams Depo. p. 86-88; Kocel Aff'd ¶21). The FMLA form included a "Certification of Health Care Provider" from Williams' personal physician, Dr. Mary Ellen Masleid. (Kocel Aff'd ¶22). Dr. Masleid stated in the Certification that Williams had: "Chronic conditions – seizure disorder, sleep apnea causing episodic incapacity." (Kocel Aff'd ¶23). The FMLA forms were forwarded to Dr. Craig Tokowitz, the Medical Director at Gary Works, for review. (Kocel Aff'd ¶24). While reviewing the forms, Dr. Tokowitz noticed that Williams' doctor indicated that Williams had a seizure disorder. (Williams Depo. p. 89). Dr. Tokowitz reviewed Williams' medical records, including the Health Inventory form that he completed when first hired in 2001, and did not find anything in these records referencing seizures. (Williams Depo. p. 89). Dr. Tokowitz then arranged for Williams to report to the Medical Department for an evaluation on May 18, 2006. (Williams Depo. p. 89; Kocel Aff'd ¶25).

During the evaluation, Williams informed Dr. Tokowitz that his family witnessed him having seizures for many years while sleeping. (Williams Depo. pp. 87-88, 108-109). Dr. Tokowitz told Williams that he was going to talk to the Labor Relations Department about Williams not providing this information during his previous medical exams. (Williams Depo. p. 96).

Following the evaluation, Dr. Tokowitz noted the following:

> . . . [Williams] has a history of sleep apnea which was discovered when he had sleep study . . . . He had the sleep study in 2003 (approximately). . . . Years ago he was having seizure but only during sleep, in the early 1990's. They diagnosed the seizures as Grand Mal. . . . The way he [knew] he had a seizure he would [bite the side of his mouth, hurt his shoulder or wake up on the floor . . . . Family members had witnessed him having the seizures [at] night . . . . He has [known about the] seizures for about 12 years, but never knew what caused it . . . . The last episode he had was this morning . . . . He relates that he may have a seizure today and a seizure tomorrow, but not have one for 3 months . . . . He relates that the last time he had a seizure prior to today was a couple of months ago.

6

> A(Assessment): Nocturnal Grand Mal seizures
>
> P(Plan): . . . . The other issue is that I could not find any mention in the record that he had seizures. I asked him if he had ever told anyone in Medical that he had seizures and he said that he had not. The only item that I found was in the Health Inventory where convulsions was checked yes and then scratched out and no was checked. I advised him that with the safety sensitive nature of the jobs in the mill that it would be very important to let the Medical Department know that he had seizures. He said that he didn't feel that the seizures were an issue because they didn't occur during the day. I advised him that I would be talking to Labor Relations about information not being provided during his physical exams. I advised him that the 2 GM would not be accommodated and advised him to go home and that someone will be contacting him. He asked me if he was fired and I told him that was not my decision, but that he probably would be hearing from Labor Relations.
>
> (Williams Depo. Ex. 11).

Dr. Tokowitz then contacted Laura Kocel, Manager – Labor Relations, to discuss the matter. (Kocel Aff'd ¶26). After receiving authorization from Williams to talk about his medical condition, Dr. Tokowitz advised Kocel that Williams failed to identify his seizures on the Health Inventory that he completed when he was first hired. (Kocel Aff'd ¶¶27-28). Kocel relied upon this information to discipline Williams on June 1, 2006. By failing to disclose this medical information, Williams prevented U. S. Steel from properly assessing whether he could safely work in its facility and, consequently, compromised his own safety and that of his coworkers. (Kocel Aff'd ¶29). Williams received two 5-day suspensions, subject to discharge, for failing to disclose relevant medical information and falsification of medical records. (Williams Depo. pp. 80-81; Williams Depo. Ex. 9; Kocel Aff'd ¶30).

On June 6, 2006, U. S. Steel held a preliminary hearing to allow Williams and the USWA the opportunity to present facts relating to the discipline. (Williams Depo. Ex. 9; Kocel Aff'd ¶31). 47. U. S. Steel converted the suspensions to discharge after the preliminary hearing. (Williams Depo.

Ex. 9; Kocel Aff'd ¶32). The USWA subsequently filed two grievances on Williams' behalf challenging the second and third discharges. (Williams Depo. Ex. 9; Kocel Aff'd ¶33). U. S. Steel denied the grievances after Williams and the USWA presented his position at three hearings provided under the BLA. (Williams Depo. p. 81; Williams Depo. Ex. 9; Kocel Aff'd ¶34). Williams' grievances challenging all three discharges (for an unexcused absence on January 26, 2006; for failing to disclose relevant medical information; and for falsification of medical records) subsequently proceeded to an arbitration hearing on March 22, 2007. (Williams Depo. pp. 81; Williams Depo. Ex. 10; Kocel Aff'd ¶35). After hearing testimony from all parties, the Arbitrator sustained the grievance relating to Williams' first discharge for an unexcused absence on January 26, 2006. (Williams Depo. Ex. 10; Kocel Aff'd ¶36). As to the grievances challenging the second and third discharges, the Arbitrator determined that U. S. Steel had proper cause to discharge Williams for failing to disclose relevant medical information. (Williams Depo. Ex. 10; Kocel Aff'd ¶37). This decision was based on Williams' failure to disclose that he had a history of seizures when he completed a Health Inventory on May 31, 2001, and on a subsequent occasion in January 2004. (Williams Depo. Ex. 10; Kocel Aff'd ¶38). The Arbitrator agreed with U. S. Steel's position that Williams' actions compromised his own safety and that of other employers at the plant. (Williams Depo. Ex. 10). Therefore, the grievance concerning the second discharge was denied and Williams' discharge became final. (Williams Depo. Ex. 10; Kocel Aff'd ¶39). The grievance challenging the third discharge (for falsification of medical records) was dismissed. (Williams Depo. Ex. 10; Kocel Aff'd ¶39). 57. At no point during the grievance and arbitration proceedings did Williams contend that he was discharged based upon his race. (Williams Depo. pp. 81-82).

On March 13, 2007, Williams filed a charge with the Gary Human Relations Commission

and Equal Employment Opportunity Commission ("EEOC") contending that he was terminated based upon his race. The EEOC issued a Right-to-Sue letter on April 25, 2008. This lawsuit followed.

## **DISCUSSION**

Williams contends in his Complaint that U.S. Steel's decision to discharge him for failing to disclose his sleep apnea and seizure disorder in his employment application is based upon his race in violation of Title VII of the Civil Rights Act of 1964. Title VII provides that it "shall be an unlawful employment practice for an employer ... to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, ... or national origin." 42 U.S.C. § 2000e-2(a)(1).

To prevail on his race discrimination claim, Williams must either proffer direct or circumstantial evidence of his employer's discriminatory motivation/intent (known as the direct method), or rely on the indirect burden-shifting method outlined in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *See, e.g., Nagle v. Village of Calumet Park,* 554 F.3d 1106, 1114, 1119 (7th Cir.2009) (a plaintiff proceeding under the direct method survives summary judgment by creating a triable issue as to whether discrimination motivated the adverse employment action); *Ineichen v. Ameritech,* 410 F.3d 956, 959 (7th Cir.2005) (stating that under the indirect approach the plaintiff must present evidence tending to show he was a member of a protected class, he was meeting his employer's legitimate performance expectations, he suffered an adverse employment action, and he was treated less favorably than similarly situated employees who are not African American).

9

Williams has offered no evidence to support his racial discrimination claims-direct, circumstantial, or otherwise and the court's independent review of the record does not uncover any. He has not filed a brief or any supporting materials that establish any events implicating race as an issue, nor show that anyone at U.S. Steel made statements or admissions involving race. The record is also absent of any facts or inferences suggesting a causal connection between Williams termination and his being African American. Thus, there is no evidence at all suggesting that Williams's termination was the direct result of discrimination on the part of U.S. Steel.

Not only has Williams failed to produce evidence of discrimination under the direct method of proof, but he cannot meet the *prima facie* case under the indirect method[1] without evidence of similarly situated unprotected employees. *See Radue v. Kimberly-Clark Corp.,* 219 F.3d 612, 617-18 (7th Cir.2000) (a similarly situated employee must be "directly comparable in all material respects," such as, whether the employees dealt with the same supervisor, were subject to the same standards, and had engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them).

As noted above, Williams has not filed an opposition brief and thus he has not attempted to compare Defendant's treatment of him to other employees who engaged in similar conduct and were outside of his protected class. At most, Williams identified four white employees in his

---

[1]The indirect method established by the U.S. Supreme Court in *McDonnell Douglas Corp. v. Green,* 411 U.S. 402 (1973) involves a three part, burden shifting inquiry. *McDonnell Douglas,* 411 U.S. at 802; *Brummett v. Sinclair Broad. Group, Inc.,* 414 F.3d 586, 692 (7th Cir.2005). To establish a prima facie case of racially discriminatory discharge under the indirect method, a plaintiff must show that: (1) he was a member of a statutorily protected class; (2) he was meeting his employer's legitimate job expectations; (3) the employer discharged him; and (4) that similarly situated others outside the protected class were treated more favorably than the plaintiff. If the plaintiff establishes a prima facie case, the burden shifts to the employer to provide a "legitimate, non-discriminatory reason" for its action. *Id.* If the employer satisfies its burden, the burden shifts back to the employee to show that the employer's proffered "legitimate non-discriminatory reason" for termination is pre-textual. *Id.*

deposition testimony that he believes were more favorably treated in an attempt to meet this element. Apparently, Williams contends that these employees sought FMLA leave for sleep apnea and were not discharged.

Yet, Williams, it is undisputed, was not discharged for *having* sleep apnea, he was terminated for not *disclosing* it on his medical inventory at the time he was hired in 2001 and, again, in 2004. This failure prevented U.S. Steel from properly assessing whether he could safely work in its facility and compromised the safety of Williams and those working with him and thus, U.S. Steel argues it had legitimate reasons for discharging Williams. Thus, even if he could prove that other white employees had an identical medical condition to him, Williams has not alleged and there is no evidence in the record to support that any of these white employees failed to disclose their condition on their Medical Health Inventory at the time they were hired or on supplemental inventories given to them while they were employed by U.S. Steel. Given his failure to develop the evidentiary record on this score, he has not met his burden of proof. *See Koszola v. Bd. of Educ.,* 385 F.3d 1104, 1111 (7th Cir.2004) (explaining that summary judgment was proper where employee failed to supply details, other than race, that would allow meaningful comparison between herself and other employees); *Russell v. Acme-Evans Co.,* 51 F.3d 64, 69 (7th Cir.1995) (explaining that, where African-American employee did not attempt to depose white workers or their supervisors, his testimony that white workers were not transferred to less desirable jobs was insufficient without personal knowledge of the workers' performance). Thus, because Williams has not set forth a prima facie case of discrimination, U.S. Steel is entitled to summary judgment.[2]

---

[2]For the sake of completeness, the court notes that even if Williams could make out a prima facie case of discrimination, his claim would fail because he lacks evidence of pretext. Assuming arguendo, that Williams could establish a prima facie case under *McDonnell Douglas,* the burden shifts to the employer to provide a legitimate, nondiscriminatory reason for its decision which, if satisfied, shifts the

11

**CONCLUSION**

By not providing any facts in support of his racial discrimination claim Williams essentially abandoned his claim. In any event, having reviewed the record and viewing the facts in the light most favorable to Williams, he cannot establish that similarly situated unprotected employees were treated more favorably than he was treated. His failure to establish specific facts (under either the indirect or direct methods of proof) showing that there is a genuine issue for trial as to his Title VII claim, mandates summary judgment. Accordingly, U.S. Steel's Motion for Summary Judgment is GRANTED.

Entered: This 10th day of February, 2010

s/ William C. Lee
United States District Court

---

burden back to the plaintiff to show that the reason was "pretextual." *Ballance,* 424 F.3d at 617. The focus of a pretext analysis is whether the employer's stated reason for the termination was honest. *Hague v. Thompson Distrib. Co.,* 436 F.3d 816, 823 (7th Cir.2006). Pretext is not a mere "business error" but rather "a lie or deceit designed to cover one's tracks." *Cardoso v. Robert Bosch Corp.,* 427 F.3d 429, 435 (7th Cir.2005). Here, U.S. Steel has provided a legitimate non-discriminatory reason for terminating Williams. Williams presented no evidence that U.S. Steel did not honestly believe that he violated its policies by failing to disclose his medical condition. Accordingly, summary judgment would be appropriate under this analysis as well.